People v Hilton (2018 NY Slip Op 07981)





People v Hilton


2018 NY Slip Op 07981


Decided on November 21, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2018

109302

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
JAMES HILTON, Appellant.

Calendar Date: October 17, 2018

Before: Garry, P.J., McCarthy, Lynch, Aarons and Rumsey, JJ.


Danielle Neroni Reilly, Albany, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



MEMORANDUM AND ORDER
Aarons, J.
Appeal from a judgment of the Supreme Court (Milano, J.), rendered December 2, 2016 in Schenectady County, upon a verdict convicting defendant of the crimes of assault on a police officer, assault in the second degree, strangulation in the second degree and resisting arrest and the violation of disorderly conduct.
In August 2015, a City of Schenectady police officer (hereinafter the victim) observed defendant, who was drunk, in the middle of the street holding an orange traffic cone and speaking through it as though it was a bull horn. The victim inquired about the cone and was subsequently reassured by defendant's friends that the cone would be returned to its original location. The victim, however, saw defendant later still holding the traffic cone. The victim stopped defendant, asked him for identification and, after defendant refused, the victim told defendant that he would need to be detained. While in the process of being detained, defendant assaulted the victim. Defendant then ran away, and the victim was taken to the hospital where he was treated for his injuries. Police officers subsequently found defendant hiding in a dumpster. Defendant was driven to the hospital where the victim identified him as the assailant. In connection with this incident, defendant was charged by indictment with assault on a police officer, assault in the second degree, strangulation in the second degree, disorderly conduct and resisting arrest. Upon defendant's motion to suppress identification evidence, a Wade hearing was held before a Judicial Hearing Officer, after which Supreme Court adopted the [*2]recommendation to deny defendant's motion. Following a jury trial, defendant was convicted as charged. Supreme Court thereafter sentenced defendant to an aggregate prison term of 13 years, to be followed by five years of postrelease supervision. Defendant appeals.
Defendant's argument that the evidence was not legally sufficient to support his conviction is unpreserved for review given that he failed to renew his motion to dismiss at the close of all proof (see People v Lane, 7 NY3d 888, 889 [2006]; People v Miranda, 163 AD3d 1168, 1169 [2018]; People v Ash, 162 AD3d 1318, 1318 [2018], lv denied 32 NY3d 1002 [2018]). Defendant, however, also argues that the convictions for assault on a police officer, assault in the second degree and strangulation in the second degree were against the weight of the evidence. In view of this assertion, we necessarily review the evidence adduced regarding each element of these specifically challenged crimes (see People v Spencer, 152 AD3d 863, 863 [2017], lv denied 30 NY3d 983 [2017]; People v Pigford, 148 AD3d 1299, 1300 [2017], lv denied 29 NY3d 1085 [2017]). "Where, as here, it would have been reasonable for the factfinder to reach a different conclusion, then we must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Williams, 138 AD3d 1233, 1234 [2016] [internal quotation marks, brackets and citations omitted], lvs denied 28 NY3d 932, 939 [2016]; see People v Myers, 163 AD3d 1152, 1153 [2018]; People v Williams, 156 AD3d 1224, 1225-1226 [2017], lv denied 31 NY3d 1018 [2018]).
Regarding the charge of strangulation in the second degree, a physician testified at trial that the bruising suffered by the victim on his neck was "more linear in nature" and opined that it was consistent with pressure being applied to the carotid artery. The physician further stated that, with enough pressure to the carotid artery, a person could lose consciousness within 5 to 10 seconds. The victim testified that the bruise on his neck came "from a carotid hold, or a blood choke" being applied to him by defendant while he was on his stomach and defendant was on his back and that such hold affected his consciousness. Although defendant testified that he never performed a blood choke hold on the victim, the jury was entitled to reject his account of the incident at issue (see People v Valcarcel, 160 AD3d 1034, 1037 [2018], lvs denied 31 NY3d 1081, 1088 [2018]). Based upon the foregoing and the photographs admitted into evidence, we conclude that the strangulation conviction was not against the weight of the evidence (see People v Ryder, 146 AD3d 1022, 1025 [2017], lv denied 29 NY3d 1086 [2017]; People v Cox, 129 AD3d 1210, 1212 [2015], lv denied 26 NY3d 966 [2015]).
Regarding his argument that the convictions for assault on a police officer and assault in the second degree were against the weight of the evidence, defendant challenges the proof as to the element of serious physical injury. Serious physical injury is defined as a "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]). The victim testified that defendant punched him multiple times in the head while on top of him and that he lost consciousness. When the victim regained consciousness, he was dizzy and had difficulty standing up. The victim was eventually taken to the hospital where he was diagnosed with a fractured temple, a broken finger and swelling to his brain. The victim also had bruising and swelling on his face, bruising on his neck and a black and blue eye. Following this incident, the victim treated with a traumatic brain specialist, who, in October 2016, advised him that his issues, including his post-concussive migraine syndrome, could be long term. At the time of trial, the victim stated that he experienced dizziness, memory loss and headaches and that he has missed time from work. The [*3]victim also stated that sometimes his headaches are so severe that he stays in bed all day. The victim's girlfriend similarly testified as to the severity of the victim's headaches and also stated that the victim had trouble remembering words and sometimes had a blank stare during a conversation. Viewing the evidence in a neutral light, we conclude that the victim suffered a protracted impairment of health (see People v Ford, 156 AD3d 1242, 1244 [2017], lv denied 31 NY3d 1013 [2018]; People v Nicholson, 97 AD3d 968, 969-970 [2012], lv denied 19 NY3d 1104 [2012]; People v Jau Kud Su, 239 AD2d 703, 704-705 [1997], lv denied 90 NY2d 940 [1997]; cf. People v Lewis, 277 AD2d 603, 606-607 [2000], lv denied 95 NY2d 966 [2000]; compare People v Phillip, 279 AD2d 802, 803-804 [2001], lv denied 96 NY2d 905 [2001]).
Defendant claims that count 5 of the indictment charging him with resisting arrest was rendered duplicitous by testimony adduced at trial. We agree. "Even if a count facially charges one criminal act, that count is duplicitous if the evidence makes plain that multiple criminal acts occurred during the relevant time period, rendering it nearly impossible to determine the particular act upon which the jury reached its verdict" (People v Dalton, 27 AD3d 779, 781 [2006], lv denied 7 NY3d 754 [2006]). The indictment charged defendant with one count of resisting arrest. According to the record evidence, however, the jury was presented with two instances where defendant resisted an officer's arrest — one involving the victim that turned violent and the other involving the officers who discovered him in the dumpster. We also note that, during deliberation, the jury asked whether it could consider the incident at the dumpster with respect to the resisting arrest charge or solely defendant's encounter with the victim. In our view, Supreme Court's response in rereading count 5 of the indictment failed to dispel any confusion by the jury (compare People v Miller, 112 AD3d 1061, 1063 [2013], lv denied 23 NY3d 1040 [2014]). Although this argument is unpreserved for review, we take corrective action in the interest of justice by dismissing count 5 of the indictment with leave to the People to re-present any appropriate charges to a new grand jury (see CPL 470.15 [6] [a]; People v Baker, 123 AD3d 1378, 1378-1379 [2014]).
We reject defendant's argument that Supreme Court erred in adopting the Judicial Hearing Officer's Wade hearing report recommending the denial of defendant's motion to suppress. Contrary to defendant's assertion, the showup identification was reasonable given its geographic and temporal proximity to the crime (see People v Gilley, 163 AD3d 1156, 1158 [2018]; People v Bellamy, 118 AD3d 1113, 1116 [2014], lv denied 25 NY3d 1159 [2015]; People v August, 33 AD3d 1046, 1048 [2006], lv denied 8 NY3d 878 [2007]; see generally People v Brisco, 99 NY2d 596, 597 [2003]). The evidence from the Wade hearing reveals that, after defendant was apprehended, he was driven approximately one hour later to the hospital parking lot in a police car. The victim, who was approximately 10 feet from the police car, immediately identified defendant when the rear door was opened. Additionally, the fact that defendant was handcuffed and in the rear seat of a police vehicle when the victim identified him did not render the showup identification unduly suggestive as a matter of law (see People v Brown, 46 AD3d 1128, 1129-1130 [2007]; People v Armstrong, 11 AD3d 721, 722 [2004], lv denied 4 NY3d 760 [2005]).
We are unpersuaded by defendant's claim that Supreme Court erred in permitting the People to submit evidence of defendant's background as a mixed martial arts fighter (see People v Scott, 47 AD3d 1016, 1020-1021 [2008], lv denied 10 NY3d 870 [2008]). Supreme Court found, among other things, that such evidence was "appropriate and probative" on the serious physical injury element of assault in the second degree and the element of impeding the normal breathing of another person for strangulation in the second degree. Furthermore, we reject [*4]defendant's assertion that the probative value of such evidence was outweighed by the potential prejudice to him (see generally People v Acevedo, 40 NY2d 701, 704-705 [1976]).
Nor do we find that defendant was deprived of meaningful representation. Defendant's dissatisfaction with defense counsel stems mainly from a disagreement with trial strategies. Defendant, however, did not demonstrate the absence of strategic or legitimate explanations for the claimed inadequacies (see People v Wright, 160 AD3d 1110, 1112 [2018], lv denied 31 NY3d 1154 [2018]). Moreover, notwithstanding defense counsel's failure to lodge certain objections, our review of the record discloses that defense counsel sought to preclude evidence of the pretrial identification, made opening and closing statements, cross-examined the People's witnesses and called witnesses in support of defendant's defense. Accordingly, defendant did not receive the ineffective assistance of counsel (see People v Ackerman, 141 AD3d 948, 950-951 [2016], lv denied 28 NY3d 1181 [2017]; People v Bowman, 139 AD3d 1251, 1252-1253 [2016], lv denied 28 NY3d 927 [2016]; People v Abare, 86 AD3d 803, 806 [2011], lv denied 19 NY3d 861 [2012]).
Defendant failed to preserve his contention that Supreme Court erred in its Molineux ruling (see People v Cayea, 163 AD3d 1279, 1280 [2018]). Defendant's argument that Supreme Court's Molineux charge was erroneous is likewise unpreserved given that he did not object to the charge as given (see People v Gomez, 138 AD3d 1017, 1018 [2016], lv denied 27 NY3d 1151 [2016]; People v Walker, 274 AD2d 600, 601 [2000], lv denied 95 NY2d 908 [2000]). Even if defendant had preserved his claims with respect to the Molineux ruling and charge, they are without merit. Defendant's challenge to the remarks made by the prosecutor during opening and closing statements is unpreserved in the absence of a timely objection thereto (see People v Gunn, 144 AD3d 1193, 1195 [2016], lv denied 28 NY3d 1145 [2017]; People v Richard, 30 AD3d 750, 755 [2006], lv denied 7 NY3d 869 [2006]). In any event, the challenged comments, even if erroneous, did not deprive defendant of a fair trial (see People v Wheeler, 159 AD3d 1138, 1143 [2018], lv denied 31 NY3d 1123 [2018]). Defendant's remaining contentions have been considered and lack merit.
Garry, P.J., McCarthy, Lynch and Rumsey, JJ., concur.
ORDERED that the judgment is modified, as a matter of discretion in the interest of justice, by reversing defendant's conviction of resisting arrest under count 5 of the indictment; said count dismissed and the sentence imposed thereon vacated, with leave to the People to re-present any appropriate related charges to a new grand jury; and, as so modified, affirmed.